DA 07-0585

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 60N

IN THE MATTER OF THE CUSTODY
AND PARENTAL RIGHTS OF D.S.,

A Youth in Need of Care.

APPEAL FROM:  District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADN 2005-021
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jim Wheelis, Chief Appellate Defender, Helena, Montana

For Appellee:

Hon. Mike McGrath, Montana Attorney General, David Ole Olson,
Assistant Attorney General, Helena, Montana

Leo J. Gallagher, Lewis and Clark County Attorney, Carolyn Clemens,
Deputy County Attorney, Helena, Montana

Submitted on Briefs:  January 23, 2008

Decided:  February 20, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 K.S. appeals the termination of her parental rights. We affirm.

¶3 A restatement of the issue is whether the District Court abused its discretion in terminating K.S.'s parental rights to D.S. because K.S. failed to complete multiple treatment plans.

¶4 K.S. is the biological mother of D.S., born in 2000. In November 2005 the Department of Public Health and Human Services (DPHHS or Department) moved for temporary custody and adjudication of D.S. as a youth in need of care. The basis for the petition was that K.S. was physically neglecting her son by failing to provide basic necessities and allowing him to be exposed to an unreasonable physical or psychological risk by leaving him with strangers or inappropriate caregivers. On December 1, 2005, the District Court granted emergency protective services allowing the Department to remove the child from the home and place him in temporary care. The court scheduled a show cause hearing for December 12, 2005. On December 8, 2005, DPHHS gained temporary legal custody (TLC) and a guardian ad litem was assigned to D.S. The show cause hearing was subsequently continued and on December 20, 2005, K.S. stipulated that D.S.

2

was a youth in need of care. The stipulation indicated that the District Court would hold a review hearing in June 2006 to determine if the Department's temporary custody of D.S. should be extended. The Department then undertook proceedings against C.S., D.S.'s biological father.

¶5 K.S. entered into a treatment plan in January 2006. This plan was updated in April and May 2006. It was approved by the court in June 2006 at which time the parties stipulated to extend it for an additional six months. The June 2006 review hearing was continued and rescheduled for December 8, 2006. K.S.'s treatment plan was updated in August 2006 and in September 2006 the Department requested a six-month extension of TLC which the court granted. In November 2006 a hearing on K.S.'s updated treatment plan was held and the plan was approved by the District Court.

¶6 In March 2007 K.S.'s treatment plan was again updated and the Department requested that TLC be extended again. The court granted the request. In May 2007 DPHHS petitioned for termination of both K.S.'s and C.S.'s parental rights with consent for adoption. In July 2007 C.S. voluntarily relinquished his parental rights and consented to adoption. The District Court held a hearing on June 26, and continued the hearing to July 11, 2007. The court terminated K.S.'s rights on August 14, 2007. K.S. filed a timely Notice of Appeal.

## DISCUSSION

¶7 The District Court found that K.S.'s treatment plan had been updated several times between the time D.S. was adjudicated a youth in need of care and the termination hearing, and that K.S. had not complied in full with the plan nor had the plan been

3

successful. The court observed that at the time of the hearing, the case had been open for nineteen months. The District Court heard testimony that K.S. had an "unstable" lifestyle, made poor decisions as to her own health, did not manage money well and made poor decisions related to caregivers for D.S. A therapist testified that K.S. "would need support services for a long time if she were to parent [D.S.]". Additionally, the court was told that K.S. could not meet her son's emotional and physical needs because "she cannot even meet her own basic needs." Over the months before the hearing, K.S. was, at times, unemployed and homeless, and she left the child in the care of a much older brother whose parental rights to his own child had been terminated and of whom D.S. was frightened.

¶8 This testimony and much more identifying the continued difficulties K.S. encountered in parenting D.S., in combination with testimony describing D.S.'s foster home situation as "positive," and "safe," supports the District Court's decision to terminate K.S.'s parental rights. The court, in accordance with § 41-3-609, MCA, found or concluded that: (1) D.S. had been adjudicated a youth in need of care; (2) he had been in the custody of the State for twenty of the twenty-three months leading up to the termination order; (3) an appropriate and necessary court-approved treatment plan had been created and updated for K.S.; (4) K.S. had failed to successfully complete the treatment plans; (5) K.S.'s conduct, condition and circumstances were unlikely to change in the foreseeable future; and (6) returning D.S. to his mother's care was not in his best interest because it would result in continued neglect to the detriment of D.S.

¶9 We review a district court's decision to terminate parental rights to determine whether the court abused its discretion. The test for an abuse of discretion is "whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." However, because a parent's right to the care and custody of a child is a fundamental liberty interest, it must be protected by fundamentally fair procedures. To satisfy the relevant statutory requirements for terminating a parent-child relationship, a district court must make specific factual findings. We review those findings of fact to determine whether they are clearly erroneous. Lastly, we review the court's conclusions of law to determine whether the court interpreted the law correctly. *In re Custody and Parental Rights of C.J.K.*, 2005 MT 67, ¶ 13, 326 Mont. 289, ¶ 13, 109 P.3d 232, ¶ 13 (internal citations omitted).

¶10 Additionally, the district court is bound to give primary consideration to the physical, mental and emotional conditions and needs of the children. Consequently, the best interests of the child are of paramount concern in a parental rights termination proceeding and take precedence over the parental rights. Section 41-3-609(3), MCA; *accord Parental Rights of C.J.K.*, ¶ 14.

¶11 We have determined to decide this case pursuant to Section 1, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the face of the briefs and the record before us that the findings of fact are supported by substantial evidence, the legal issues are clearly controlled by settled Montana law which the District Court correctly interpreted, and the

5

record supports the District Court's conclusion to terminate K.S.'s parental rights. The District Court did not abuse its discretion.

¶12 We affirm.

/S/ PATRICIA COTTER

We concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS